1000 Lafayette Boulevard, Suite 1100 ▪ Bridgeport, CT 06604 ▪ T: (203) 683-6007 ▪ F: (203) 683-9881

THE **EMPLOYMENT**
LAW FIRM, LLC
MCMINN

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| VEERA VENKATA NARASIMHA, | : | CIVIL ACTION NO. |
| NARENDRA PHANI KOTTAPALLI | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **JURY TRIAL DEMANDED** |
| | : | |
| ASML US, LP | : | |
| | : | |
| Defendant. | : | AUGUST 9, 2021 |
| | : | |

## COMPLAINT

## JURISDICTION AND VENUE

1. This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2; and Connecticut state law.

2. The jurisdiction of this court is founded upon 28 U.S.C. §1331 (federal question) and the provisions of 28 U.S.C. §1343.

3. Venue is proper in the District of Connecticut pursuant to 28 U.S.C. §1391(b) in that the claims arose in this district and Plaintiff resides in this district.

4. Supplemental jurisdiction over Plaintiff's supplemental state law claims is invoked pursuant to 28 U.S.C. §1367 as the claims arise out of the same transaction and occurrences as Plaintiff's federal claims.

5. Costs, expert witness fees, and attorney's fees are sought pursuant to 42 U.S.C. §1988.

## PLAINTIFF

6.  The Plaintiff, Veera Venkata Narasimha Narendra Phani Kottapalli ("Plaintiff" or "Kottapalli ") is a natural person and resident of the State of Connecticut.

## DEFENDANT

7.  The Defendant, ASML US, LP ("Defendant" or "ASML"), is incorporated under the laws of Delaware, headquartered in Arizona, is registered to conduct business in the State of Connecticut, and conducts substantial business at 77 Danbury Rd. Wilton, CT 06897, where Plaintiff was employed.

8.  Defendants employ more than twenty (20) employees.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9.  Kottapalli received a Notice of Right to Sue from the U.S. Equal Employment Opportunity Commission on May 12, 2021, and timely files this action.

## FACTUAL ALLEGATIONS

10. Plaintiff is of Indian descent and had been working for ASML pursuant to a lawful H1b Visa for specialty workers.

11. ASML US Inc. originally hired Kottapalli on October 22, 2012, as a Design Engineer 2, and in Jan. 2017, he was promoted to the position of Senior Design Engineer 1.

12. On January 1, 2018, ASML US Inc. reorganized. As a result of that corporate reorganization, ASML US Inc. Research and Development (R&D) activities and employees were spun off into a limited partnership, ASML US, LP.  Kottapalli's employment with ASML US, Inc. was in R&D; accordingly, on January 1, 2018, Kottapalli was transferred to ASML US, LP, where he remained until Defendant terminated his employment.

-2-

13. Kottapalli always performed the duties of his position in a satisfactory manner achieving positive results for the Defendant. Kottapalli has remarkable patent ideas which he put to good use at ASML. Kottapalli, in his role, often submitted ideas or Invention Disclosure Forms (IDF) for potential patent applications for the various projects he had been working on.

**A. Despite His Accomplishments, Kottapalli was Treated Disparately.**

14. For instance, on one occasion, Kottapalli submitted an IDF Form for a potential patent filing for an invention, which had been subsequently submitted to the patent review team in the Netherlands by the Wilton CT patent team. Kottapalli provided these ideas and developed technical content information to the project team member, "Van De Kerkhof, Marcus, Adrianus" located in the Netherlands. While work on that Project seemingly ceased, Kottapalli was assigned to other projects in the EUV Program only.

15. Yet, when Kottapalli's proposed idea resurfaced under a remarkably similar IDF from "Van De Kerkhof, Marcus, Adrianus," Kottapalli was inexplicably omitted from the list of inventors on the IDF or given credit for his work, which he had significantly contributed to and even previously provided developed information to "Van De Kerkhof, Marcus, Adrianus." Also, Van De Kerkhof, Marcus Adrianus is a member of the patent review committee in the Netherlands for Kottapalli's submitted IDF.

16. After providing an earlier history of developed information sharing with "Van De Kerkhof, Marcus Adrianus" to the Wilton Patent team, Steve Wernicki ("Wernicki") (non-Indian; U.S. Citizen) from the Wilton Patent team mentioned that if these ideas were patented, then Kottapalli would be added to the patent as a Lead author.

-3-

17. Eventually several others IDFs were grouped together and filed as a Family Patent and Kottapalli was added to the patent as one of the authors. The Patent Team sent the first version of the Patent filing 'US 62/597913' to sign in Dec. of 2017 and Kottapalli signed it immediately.

**B. Kottapalli Raises Good-Faith Concerns Pursuant to his Rights Under Conn. Gen. Stat. § 31-51q and is Transferred.**

18. On January 26, 2018, the Patent Team sent a second version of Patent filing document 'US 62/620426' to sign, adding more content and additional authors.

19. Kottapalli voiced concerns related to some newly added content in 'US 62/620426' to his manager, Andrew Judge (non-Indian; U.S. citizen).

20. Due to his good-faith concerns, Kottapalli refused to sign the 'US 62/620426' patent application and requested additional information.

21. In retaliation, within one month, on February 8, 2018, Judge required a meeting with Kottapalli, mentioning that he meet with other Program team members, Adam Kohl and Richard Johnson, and on Feb. 22, informed Kottapalli that he was involuntary transferring him to the DUV Program from the EUV Program.

22. After repeated requests and follow-ups with the Patent Team to get the second filing 'US 62/620426' IDF details, in April of 2018, Wernicki from the Wilton Patent team finally provided Kottapalli the IDF details. From the IDF details, Kottapalli noticed concerns related to some newly added content in 'US 62/620426' submitted by Andrew Judge, Kottapalli's Manager. Of particular concern was that the content ideas were actually proposed by Kottapalli in brainstorming sessions.

-4-

23. Shortly thereafter, bullying towards Kottapalli began by one of the managers Roberto Weiner and his team members. In fact, Weiner used a derogatory word to Kottapalli, during a meeting, with other team members present— Richard Johnson and Adam Kohl.

24. Later, Kottapalli lodged a complaint related to this incident, which he provided to Human Resources (HR) Representative Jennine Labriola ("Labriola"); (non-Indian; U.S. Citizen) and HR Manager Cynthia Houston ("Houston"); (non-Indian; U.S. Citizen).

25. Then, Kottapalli using information and guidance provided to him by ASML's immigration department, traveled to India for his Visa extension stamping and vacation during May-June 2018.

26. Subsequently, Kottapalli requested that the patent group perform a complete investigation of events to avoid these situations in the future. The patent team promised they would conduct an investigation but asked Kottapalli to sign the patent application 'US 62/620426'.

27. After that, within a few days, at the end of August 2018, the patent team sent a third version of the patent filed document 'US 62/718211' to sign adding more content. Kottapalli noticed concerns in 'US 62/71821' document but signed both the second 'US 62/620426' and third version 'US 62/718211' of the patent filed documents, believing that the patent group would perform a complete and thorough investigation.

28. During mid-October 2018, a department re-organization occurred and a new manager Ryan Munden ("Munden") (non-Indian; U.S. Citizen) was assigned to Kottapalli.

29. Subsequently, Kottapalli asked the patent group about the IDF submitted for the third filing 'US 62/718211'. The Patent team provided an IDF copy and it was submitted by author "Brouns, Derk Servatius Gertruda." Kottapalli, once again, had to prove that he had proposed this idea and corresponding information was shared with Brouns by providing old email communications details to the patent team. Finally, the Patent Team added Kottapalli's name on the IDF copy for internal records.

30. In the first half of 2019, Kottapalli received a lower performance rating (partially meets expectations) by Munden for the 2018 year and his review contained conflicting, fabricated, and misleading information. Kottapalli appealed his 2018 performance review and HR subsequently arranged meetings with manager Munden; Department Manager, Mark Schuster (non-Indian; U.S. Citizen); and Sector head, Engineering Vice President Louis Lu (non-Indian; U.S. Citizen), per ASML appeal phase-4 process step.

**C. Kottapalli Requests a Meeting with Human Resources.**

31. As a result of his unjustified poor performance review, Kottapalli requested a meeting with Executive Vice President-Human Resources (EVP-HR) headquarters, located in the Netherlands to refute his unwarranted poor review.

32. Kottapalli's attempts to refute the review were met with recalcitrance. The HR Manager, Houston was not supportive of Kottapalli and implied that Kottapalli leave the company.

33. The Patent Team completed the investigation but did not provide any details of the outcome to Kottapalli. Later, the Patent group sent new documents to sign and stated that these are required for the next steps in the patent application process. Steve

Wernicki, from the Wilton CT patent team; Kottapalli's manager, Munden; and HR Manager, Houston, pressured Kottapalli to sign the documents provided by the Patent team.

34. Kottapalli, out of concern, did not sign the documents and asked for a meeting with the EVP-HR to raise all his concerns.

35. In response, Munden began threatening Kottapalli to not meet with the EVP-HR (located in the Netherlands). Pointedly, in a 1:1 meeting during March-April, Munden threatened Kottapalli, stating that his future career would be completely destroyed if he went to the EVP-HR.

36. In May 2019, ASML filed for Kottapalli's H1b Visa extension, this time Defendant supplied conflicting information, indicating that "Kottapalli was currently employed by ASML US, Inc.  and requesting for a change of employer to ASML US LP commencing from October 1, 2019 through September 30 2022." Kottapalli was not aware of this submission of this conflicting information to Department of Homeland Security during this period. ASML only shared this document package to Kottapalli, if there was a need to travel for his Visa extension stamping and after receiving H1B approval notice.

37. In late 2019, whenever Kottapalli followed up with HR and his manager related to his meeting with the EVP-HR, Defendant provided excuses and discouraging responses in an effort to deliberately prevent him from ever meeting with the EVP-HR.

38. Then, in a discrete act of retaliation, on one occasion, Kottapalli was sick and had to use sick leave for the remainder of the day and the following day, which had been pre-

approved.  Yet, in his performance review, Defendant positioned taking sick leave as a negative.

39. Meanwhile, Munden continued his crusade to either terminate Kottapalli or force him to quit.  To that end, Munden began to pressure Kottapalli to apply for jobs in other departments—indicative of his desire to get rid of Kottapalli.

40. From December 2019 through February of 2020, Kottapalli had to travel back to India for his Visa extension stamping.  Kottapalli's Visa process was longer than normal and he returned to the U.S. on February 10, 2020.

41. On February 11, 2020, the day after Kottapalli's return, Munden immediately arranged a 1:1 meeting to review Kottapalli's 2019 Performance and again supplied false conflicting and inaccurate information, in an attempt to support his otherwise unjustified poor performance review.

42. Kottapalli, feeling emotionally distressed, informed Munden that he did not want to continue the meeting and left the room.

43. Subsequently, Kottapalli requested HR Manager, Houston, to provide an alternate manager be assigned to him for communication until he is able to meet with the EVP-HR, given the multitude of issues he was experiencing with Munden. Houston proposed Department manager Mark Schuster's name and assigned him for communication and assignment of project tasks to Kottapalli. Mark Schuster allocated project and work scope to Kottapalli.

44. Kottapalli, at a dead-end with Munden, formally appealed his 2019 performance review.

45. On February 19, 2020, Houston, HR Manager, arranged for Kottapalli to be in contact with Lindsey Owen ("Owen") (non-Indian; U.S. Citizen) (from HR Compliance U.S.) to finally schedule an appointment with the EVP-HR.

46. On February 20, 2020, Owen gathered information from Kottapalli and mentioned their HR Compliance team will help to arrange a meeting for Kottapalli.

47. The very next day, Owen reneged on this promise and informed Kottapalli that there was no option to arrange a meeting with the EVP-HR. That same day, Kottapalli utilizing HR's 'Open Door Policy' directly requested the EVP-HR office for assistance in meeting with the EVP-HR, Peter Bailliere, located in the Netherlands.

48. On February 21, 2020, Houston responded with respect to Kottapalli's performance appeal—stating she would follow up with a meeting notice for consultation per the process. This too never occurred. Houston failed to arrange a meeting with the correct members of management to discuss the performance appeal and when the phase due date was reached, which was four weeks from appeal submission.

49. On March 9, 2020, EVP-HR Peter Bailliere responded to Kottapalli and mentioned he was not part of the Open-Door Policy or in the Ethics Group and only directed Kottapalli back to the U.S. compliance office. Kottapalli followed up with the EVP-HR for an appointment and his 2019 performance appeal Phase-4 was submitted to Sector Head, Louis Lu.

50. On March 25, 2020, Kottapalli sent an email to HR raising concerns about the discrepancy in his position titles and relative salary shown in the Compensation Statement of 2020, also available in HR4U software.

**D. Kottapalli Receives a Warning in Close Temporal Proximity to His Complaints.**

51.  Within one week of complaining to HR, in retaliation, Defendant issued Kottapalli a warning letter with fabricated information and false accusations.

52.  Then, Kottapalli noticed even more errors after double-checking the information in ASML SAP software —this time, Kottapalli's transfer start date to ASML US LP was shown as July 1, 2019, instead of Jan. 1, 2018. Kottapalli sent another email to HR regarding this discrepancy.

53.  Of significant importance, Defendant's error in the discrepancy records may have caused Kottapalli to lose potential benefits compared to his peers.

54.  On April 13, 2020, Defendant's HR Representative, Labriola, provided information mentioning that a few employees were not transferred due to Immigration.

55.  That day, Kottapalli engaged in extensive communications with the U.S. Immigration Department to ensure it had complete information.

56.  On April 24, 2020, the 2019 Appeal Phase-5 to refute Kottapalli's performance review was submitted.  (The Board Members need to review the submission and provide the final decision.)

57.  On April 30, 2020, Kottapalli received his second warning in short proximity from his first (within a month) in furtherance of Defendant's effort to force Kottapalli out of the company. Kottapalli forwarded both warning letters to the EVP-HR and followed up for an appointment to raise all these issues and address his concerns.

58.  On May 5, 2020, Kottapalli received a response from Defendant's Immigration Department stating that:  "I hope you are doing well, My apologies, as I thought I sent

this to you last week. I received the below from our HR system person. See her comments below. Your record is accurate and you can double check the ADP portal as well".   Of note, this message actually was received by the immigration contact person (Lori Ann De Leo) Ann on April 24, 2020, from Chris Barendrick.

59. Later Kottapalli started to review ASML's earlier provided H1B extension document package and noticed that incorrect information about his transfer date was submitted to the Department of Homeland Security, via letter, dated May 17, 2019.

60. One day later on May 6, 2020, Kottapalli was terminated from his position and was not provided a reason for termination.  Immediately thereafter, Kottapalli submitted this information to the Board of Management ("Open Door Policy").   He also requested the local management team to send him the necessary documentation regarding his termination and the reason for his termination. This never occurred.

61. On May 8, 2020, Kottapalli contacted the individuals who had been involved in processing his immigration documents to obtain all the information that was sent to immigration.  ASML sent an unemployment notice stating the reason for unemployment as: "Discharge/Suspension" with the company name as ASML US, Inc.

62. On May 11, 2020, the law firm representing ASML "Burns Barton PLC" sent notice to Kottapalli warning him to direct all future correspondence only to Ms. Owen and not to contact other ASML employees and management.

63. On May 14, 2020, Kottapalli received a memorandum from ASML regarding his H-1B Return. On May 19, 2020, ASML sent an email copy of the experience letter showing incorrect entities transfer dates. Kottapalli replied with a copy of the letter provided by ASML Manager-U.S. Compensation & Benefits (Heather Woodward).

64. After that, on May 22, 2020, ASML sent another email copy of the experience letter with corrected entities transfer dates. When Kottapalli asked for an original copy that had been notarized, ASML refused to provide it.

65. Subsequently thereafter, Kottapalli tried to obtain Defendant's communications and a copy of the H1B revocation notice with the United States Citizenship and Immigration Services (USCIS), but this information was not provided to him.

66. On June 9, 2020, ASML mailed Kottapalli another unemployment notice showing the reason for unemployment, changed it to a "Voluntary Leaving" with the company name stated ASML US Inc.

67. On July 3, 2020, ASML deposited $148.00 to Kottapalli's account and in ADP statement it mentioned it was for a Patent Award. No other information was provided to Kottapalli for this award.

68. Kottapalli, because of his internal complaints made pursuant to C.G.S. § 31-51q, coupled with his Indian national origin, quickly made him the target of termination. Kottapalli raised issues of concern internally to HR, was rapidly issued two warnings—one, a week after his complaint to HR; the second, within a month after that; he then complained further and requested to meet with the EVP-HR and was quickly terminated for no particular reason.

**E**. **ASML's Mishandling of Kottapalli's H1B Visa.**

69. Kottapalli is of Indian descent and had been working for ASML pursuant to a lawful H1B Visa for specialty workers.

70. The H1B Visa in the United States is a non-immigrant work visa. The visa allows companies to hire employees from other countries to fill specialized positions in the

-12-

U.S.

71. Under this type of visa, a worker who has come to the United States to work for an American company has the opportunity to apply for his green card and obtain permanent residence.

72. However, it is the company that must apply for the employee's green card or the renewal if the H1B Visa is coming to its expiration date.

73. Kottapalli's H1B Visa was set to expire. In May 2019 the defendant filed a petition to have Kottapalli's visa renewed.

74. However, Defendant negligently provided erroneous information on the May 2019 application indicating that "Kottapalli was currently employed by ASML US, Inc. and requesting for a change of employer to ASML US LP commencing from October 1, 2019, through September 30, 2022."

75. In May 2019, when such an application was filed, Kottapalli had already been transferred to ASML US LP since January 1, 2018. Therefore, the statement made by ASML in May 2019 indicating that he was "currently employed by ASML US Inc. was an inaccurate assertion, the consequences of which Kottapalli was unaware of since he was not provided application for review before submitting to United States USCIS.

76. On May 5, 2020, Kottapalli received a response from the ASML Immigration Department regarding his complaints with respect to the inaccurate information provided on his application. The response stated that Kottapalli's information was accurate. However, it was known by Kottapalli that ASML had indicated in the May 2019 application that he was employed at that time by ASML US, Inc. which was

incorrect since by then the company had become ASML US, LP.

77. Kottapalli's H1B Visa renewal was revoked.

78. Consequently, Kottapalli had to leave the United States and go back to India.

**COUNT ONE**

**RETALIATION,**
**IN VIOLATION OF CONN. GEN. STAT. § 31-51q**

79. Plaintiff incorporates paragraphs 1-78, with the same force and impact as if fully set

forth herein at length.

80. Kottapalli was exercising his free speech on matters of public concern, including, but

not limited to:

    a)   Raising good-faith concerns over certain information on patent documents
        submitted to the U.S. Patent and Trademark Office;

    b)   Raising concerns about the discrepancy in position titles the relative salary
        shown in the Compensation Statement of 2020;

    c)   Raising concerns with an incorrect transfer start date to ASML US LP that
        was shown by Defendant as July 1, 2019, instead of Jan. 1, 2018; and

    d)   Raising concerns with respect to ASML's communications with the U.S.
        Citizenship and Immigration Services with respect to his H1B Visa.

81. Plaintiff's decision to raise the aforementioned concerns was protected activity,

provided for and compelled by the State of Connecticut and the United States

Government.

82. In retaliation for his good-faith complaints and raising awareness to concerns,

Kottapalli was retaliated against by ASML, including, but not limited to the following:

    a)   Involuntary transferring Kottapalli to the DUV Program from the  EUV
        Program;

-14-

b) Issuing Kottapalli two warnings in close temporal proximity, one, a week after he complained to Human Resources; the second, within a month after that;

c) Issuing Kottapalli a lower performance rating containing conflicting, fabricated, and misleading information;

d) Deliberately preventing and actively deterring Kottapalli from meeting with the EVP-HR when he requested a revision of his performance review from this department;

e) Making threatening remarks to Kotapalli such as the one made by Munden that Kottapalli's "future career would be completely destroyed if [he] went to the EVP-HR";

f) Providing conflicting information in Kottapalli's visa extension petition by indicating that "Kottapalli was currently employed by ASML US, Inc. and requesting for a change of employer to ASML US LP commencing from October 1, 2019, through September 30, 2022";

g) Munden pressuring Kottapalli to apply for jobs in other departments— indicative of his desire to get rid of him; and

h) Terminating Kottapalli's employment on May 6, 2020.

83. Kottapalli's speech is protected by Sections, 3, 4, and 14 of the Connecticut Constitution.

84. The exercise of his rights did not materially interfere with his job performance, nor did it interfere with his working relationship with Defendant.

85. Plaintiff was discharged due to the exercise of his rights guaranteed by the Connecticut Constitution, in violation of Conn. Gen. Stat. § 31-51q.

86. As a result of his wrongful discharge, Kottapalli has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety, and loss of the ability to enjoy life's pleasures and activities.

87. Not only did Kottapalli lose his job due to the discriminatory and retaliatory actions he was subjected to by the Defendant, but he also lost the well-earned opportunity for a future in the U.S. for him and his family.

88. Kottapalli seeks compensatory and punitive damages for Defendant's misconduct.

## COUNT TWO

### WRONGFUL DISCHARGE IN VIOLATION OF
### AN IMPORTANT PUBLIC POLICY

89. Plaintiff incorporates paragraphs 1-88, with the same force and impact as if fully set forth herein at length.

90. Kottapalli's discharge, as set forth above, violated important public policies in the State of Connecticut and the United States, including, but not limited to, public policies, immigration policies, policies with respect to employee's rights, and equality in the workplace.

91. As a result of his wrongful discharge, Kottapalli has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety, and loss of the ability to enjoy life's pleasures and activities.

92. Not only did Kottapalli lose his job due to the discriminatory and retaliatory actions he was subjected to by the Defendant, but he also lost the well-earned opportunity for a future in the U.S. for him and his family.

93. Kottapalli seeks compensatory and punitive damages for Defendant's misconduct.

## COUNT THREE

### VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### (INDIAN RACE, ANCESTRY, ETHNICITY, AND NATIONAL ORIGIN DISCRIMINATION)

94. Plaintiff hereby incorporates Paragraphs 1-88 with the same force and impact as if fully set forth herein.

95. Defendant employs more than fifteen employees.

96. Plaintiff was qualified for his position.

97. Plaintiff, of Indian descendent, is in multiple protected classes.

98. Plaintiff was subjected to outward harassment and disparate treatment, by ASML upper management, who treated him disparately by, among other things:

   a) Isolating and bullying him because of his Indian race.

   b) Transferring him to the DUV Program from the EUV Program at a time when no other Caucasian counterpart was transferred to that program.

   c) Refusing to include him on the list of inventors on the IDF, the Invention Disclosure Forms, for a potential patent filing for an invention for which he had been the one who sent the form, and refusing to give him credit for his significant contributions and ideas.

   b) Despite performing satisfactorily, giving him two warnings and lower performance reviews.

   c) Preventing him from obtaining a meeting with Executive Vice President-Human Resources (EVP-HR) headquarters to get a revision of the unwarranted low-performance review he was given.

   d) Making threatening remarks to Kotapalli such as the one made by Munden that Kottapalli's "future career would be completely destroyed if [he] went to the EVP-HR."

   e) Munden pressuring Kottapalli to apply for jobs in other departments—indicative of his desire to get rid of him.

f) Providing conflicting information in Kottapalli's visa extension petition by indicating that "Kottapalli was currently employed by ASML US, Inc. and requesting for a change of employer to ASML US LP commencing from October 1, 2019, through September 30, 2022."

99. Aside from the outward disparate treatment, Kottapalli suffered adverse employment actions, including, but not limited to, the following:

a) Being terminated from his position on May 6, 2020.

100. The above prescribed discriminatory actions were taken against Plaintiff because he is Indian.

101. Defendant's conduct is unlawful and in violation of Title VII.

102. As a result of the Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer damages, including but not limited, to substantial lost wages, fringe benefits, health insurance, retirement and pension benefits, revocation of his work visa, mental and emotional distress, and the ability to enjoy life's pleasures.

103. Plaintiff seeks damages as a result of Defendant's unlawful conduct.

**COUNT FOUR**

**RETALIATION,**
**IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**

104. Plaintiff incorporates paragraphs 1-88 with the same force and impact as if fully set forth herein at length.

105. Plaintiff engaged in protected activity by complaining to Human Resources and upper management.

106. Sequel to his engagement in a protected activity, Plaintiff suffered multiple retaliatory employment actions, including, but not limited to:

-18-

a) Being bullied by his coworkers and one of the managers who also used a derogatory word towards Kottapalli;

b) Kotapalli received two warnings in close temporal proximity, one, a week after he complained to HR; the second, within a month after that;

c) Kottapalli was given lower performance reviews; and

d) Kottapalli was wrongfully terminated on May 6, 2020.

107. The adverse employment actions to which Plaintiff was subjected were motivated by retaliation for Plaintiff's opposition to unlawful discrimination and disparate treatment.

108. The Defendant's actions violate Title VII of the Civil Rights Act.

107. As a result of the Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer damages, including but not limited, to substantial lost wages, fringe benefits, health insurance, retirement and pension benefits, revocation of his work visa, mental and emotional distress, and the ability to enjoy life's pleasures.

110. Plaintiff is seeking damages as a result of Defendant's unlawful conduct.

## COUNT FIVE

### NEGLIGENCE,
### IN VIOLATION OF CONNECTICUT COMMON LAW

111. Plaintiff incorporates paragraphs 1-88 with the same force and impact as if fully set forth herein at length.

112. The Defendant owed the Plaintiff a duty to not act negligently with respect to their management and handling of the Plaintiff's immigration paperwork and visa.

113. The Defendants breached their duty, by, among other things,

a) Providing incorrect and/or conflicting information in Kottapalli's visa

extension.

114.   Defendants knew or should have known that their actions, described herein, would cause harm to Plaintiff. Defendants acted in conscious disregard of such foreseeable risk. Defendants' actions in engaging in the above-named unlawful practices and acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiff.

108.   As a result, Plaintiff's visa application was revoked and he had to uproot and leave the U.S. and move back to India.

109.   As a result of Defendant's actions, Kottapalli has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety, and loss of the ability to enjoy life's pleasures and activities.

110.   Not only did Kottapalli lose his job due to the negligent actions he was subjected to by the Defendant, but he also lost the well-earned opportunity for a future in the U.S. for him and his family.

111.   As a result of the Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer damages, including but not limited, to substantial lost wages, fringe benefits, health insurance, retirement and pension benefits, revocation of his work visa, mental and emotional distress, and the ability to enjoy life's pleasures.

**PRAYER FOR RELIEF**

Wherefore the Plaintiff prays that this court award:

    1. Money damages;

    2. Costs;

    3. Punitive damages, attorney fees, and expert witness fees;

    4. Pre-judgment interest

    5. Trial by jury; and

    6. Such other relief as the Court deems just, fair, and equitable.


THE PLAINTIFF,


By: _____/s/_____
    Michael C. McMinn (*ct267169*)
    **THE MCMINN EMPLOYMENT**
    **LAW FIRM, LLC**
    1000 Lafayette Blvd., Suite 1100
    Bridgeport, CT 06604
    Tel: (203) 683-6007
    Fax: (203) 680-9881
    michael@mcminnemploymentlaw.com

    *COUNSEL FOR PLAINTIFF*