# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| VEERA VENKATA NARASIMHA | ) | 3:21-CV-1076 (SVN) |
| NARENDRA PHANI KOTTAPALLI, | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ASML US, LP, | ) | July 5, 2022 |
| *Defendant*. | ) | |

## RULING AND ORDER ON DEFENDANT'S PARTIAL MOTION TO DISMISS

Sarala V. Nagala, United States District Judge.

Plaintiff Veera Venkata Narasimha Narendra Phani Kottapalli has brought this employment action against Defendant ASML US, LP. The complaint consists of five claims: (1) retaliation, in violation of Conn. Gen. Stat. § 31-51q; (2) common-law wrongful discharge; (3) race discrimination in violation of Title VII of the Civil Rights Act of 1964; (4) retaliation, in violation of Title VII; and (5) common-law negligence. Compl. ¶¶ 79–111. Relevant here, Plaintiff claims in Count One that Defendant violated § 31-51q by wrongfully terminating Plaintiff in retaliation for his exercise of free speech on matters of public concern, as protected by the federal and Connecticut state constitutions.

Defendant seeks to dismiss Count One pursuant to Fed. R. Civ. P. 12(b)(6), contending that Plaintiff fails to state a § 31-51q claim because the speech identified in Plaintiff's claim involves matters of private, not public, concern, and thus is not constitutionally protected speech. For the reasons described below, the Court agrees with Defendant. Count One of the complaint is thus DISMISSED.

## I.     FACTUAL BACKGROUND

The following facts from the complaint are accepted as true for the purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Plaintiff, a man of Indian descent, began working for ASML US Inc. as a Design Engineer under an H1b Visa in 2012.  Compl. ¶¶ 10–11.  He was promoted to the position of Senior Design Engineer 1 in 2017.  *Id.* ¶ 11.  He alleges that he always performed his duties satisfactorily, "achieving positive results" for Defendant and "often submit[ting] ideas . . . for potential patent applications for the various projects he had been working on."  *Id.* ¶¶ 11, 13.

In 2018, ASML US Inc. underwent a corporate reorganization, and its department focused on patent research and development "spun off into the limited partnership, ASML US, LP," Defendant in this action.  *Id.* ¶ 12.  Consequently, Plaintiff "was transferred" to ASML US, LP, on January 1, 2018.  *Id.*

Plaintiff asserts that, throughout late 2019 and early 2020, he raised various issues with his employment to his colleagues and the human resources department, which allegedly led to retaliation against him and his eventual termination in May of 2020.  First, Plaintiff refused to sign a patent application prepared by his colleagues related to a project he had worked on.  Specifically, he raised "good-faith concerns" to his manager regarding "some newly added content" in the application.  *Id.* ¶¶ 80(a), 20, 22.  He raised "particular concern" that specific content was "actually proposed by [Plaintiff] in brainstorming sessions," but he was not given credit for that content in the patent application.  *Id.* ¶ 22.  According to the complaint, Plaintiff voiced these concerns and experienced retaliation soon thereafter.  He was involuntarily assigned to a different program and experienced "bullying" by his manager, who used an unspecified "derogatory word" toward Plaintiff during a meeting.  *Id.* ¶¶ 21, 23.  Plaintiff lodged a complaint related to this incident and

requested an investigation of events "to avoid these situations in the future." *Id*. ¶¶ 24, 26. Despite noticing similar problems with the subsequent versions of the patent application, Plaintiff ultimately did sign the application, "believing that the patent group would perform a complete and thorough investigation." *Id.* ¶ 27.

Next, Plaintiff alleges that he raised concerns about discrepancies in his position title, relative salary, and transfer date following the corporate reorganization. *Id.* ¶¶ 80(b)(c), 36, 50. Most notably, Plaintiff noticed that his transfer start date from ASML US Inc. to ASML US, LP, was listed in various records as either July 1, 2019, or October 1, 2019, when in fact his transfer date was January 1, 2018. *Id.* ¶¶ 36, 52, 74, 80(c). Plaintiff alleges that the errors in these records "may have caused [him] to lose potential benefits compared to his peers." *Id.* ¶ 53.

Lastly, Plaintiff asserts that he raised concerns that Defendant mishandled the renewal of his H1B Visa. *Id.* ¶ 80(d). Specifically, Plaintiff represents that, in May of 2019, his H1B Visa was set to expire, requiring Defendant, as the sponsoring employer, to submit an application for renewal to the U.S. Citizenship and Immigration Services. *Id.* ¶¶ 72, 73, 80(d). Plaintiff alleges that Defendant erroneously reported that his transfer start date from ASML US Inc. to Defendant, ASML US, LP, was in 2019 rather than 2018. *Id.* ¶¶ 74–75.

After raising these various concerns to Defendant's human resources department throughout late 2019 and early 2020, Plaintiff was issued two warnings within close proximity to his complaints. *Id.* ¶¶ 54–58, 76. He was eventually terminated on May 6, 2020, and he alleges that Defendant did not provide a reason for the termination. *Id.* ¶¶ 60, 68. Consequently, his H1B Visa renewal was revoked. *Id.* ¶ 77.

In 2021, Plaintiff received permission to sue from the U.S. Equal Employment Opportunity Commission; he then timely filed the present five-count complaint on August 9, 2021. *Id.* ¶ 9.

Defendant has filed the present partial motion to dismiss, arguing that Count One fails to state a claim for relief because Plaintiff's alleged speech involves only matters of private concern, not public concern, and, therefore, is not protected under § 31-51q.

## II.     LEGAL STANDARD

### A.  Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.* In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). However, the Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id.*, and "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678. Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

B.  Conn. Gen. Stat. § 31-51q

Conn. Gen. Stat. § 31-51q[1] prohibits both public and private employers from disciplining or discharging an employee "on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution or sections 3, 4, or 14 of article first of the Connecticut Constitution."  Conn. Gen. Stat. § 31-51q; *Karagozian v. Luxottica Retail N. Am.*, 147 F. Supp. 3d 23, 35 (D. Conn. 2015).  To state a claim under § 31-51q, a plaintiff must allege four elements:  "(1) that he engaged in constitutionally protected speech, (2) that his employer took an adverse action against him, . . . (3) that there was a causal relationship between the protected activity and the adverse action," and (4) that "the exercise of his First Amendment rights did not substantially or materially interfere with his bona fide job performance or with his working relationship with his employer."  *Id.* (citing Conn. Gen. Stat. § 31-51q; other citations and internal quotation marks omitted).

Of particular import to the present motion is the first element, requiring that a plaintiff engage in constitutionally protected speech.  For speech to be constitutionally protected, it "must address a matter of public concern, and the employee's interest in expressing himself on this matter must not be outweighed by any injury the speech could cause to employee relationships."  *Id.* (citation and internal quotation marks omitted).  *See also Urashka v. Griffin Hosp.*, 841 F. Supp. 468, 474 (D. Conn. 1994) ("Section 31-51q, therefore, will afford protection to a plaintiff only if the speech for which she was allegedly terminated involved a 'matter of public concern.'" (citation omitted)).  Speech addressing public concern can relate to any "matter of political, social, or other concern to the community."  *Daley v. Aetna Life & Cas. Co.*, 249 Conn. 766, 779 (1999) (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)).  Furthermore, whether speech addresses

---

[1] Section 31-51q was amended on June 1, 2022, in ways that are not material to the present dispute.

such matters "depends on its content, its form, and the context in which it is made." *Id.* at 777. The question of what topics are matters of public concern is an issue of law, while the question of whether the employee's statements address such topics is an issue of fact. *Id.* at 782.

The Connecticut Supreme Court has clarified that the state constitution and § 31-51q generally protect employee speech that "involves a comment on official dishonesty, deliberately unconstitutional action, or other serious wrongdoing, or threats to health and safety." *Trusz v. UBS Realty*, 319 Conn. 175, 204 (2015). This is because speech concerning serious wrongdoings and threats to public safety typically involves "a broader public purpose" that is "of inherent interest to society at large," and is not merely "calculated to redress [the employee's] personal grievances[.]" *Daley*, 249 Conn. at 780 (quoting *Lewis v. Cowen*, 165 F.3d 154, 163–64 (2d Cir. 1999)). To that end, an employee will state a § 31-51q claim where she plausibly alleges that "she was motivated to champion the rights of others" with respect to the employer's conduct. *Conetta v. Statoil N. Am.*, No. 3:09-CV-444 (AVC), 2010 WL 11586740, at *6 (D. Conn. Mar. 12, 2010) (quoting *Daley*, 249 Conn. at 784). Although the employee's motive is not dispositive, it can help in determining whether the speech addressed a matter of public concern. *Karagozian*, 147 F. Supp. 3d at 36; *Daley*, 249 Conn. at 780 (quoting *Lewis*, 165 F.3d at 163–64), 785.

Speech relating to the terms and conditions of an employee's employment, the conditions of the employee's own work environment, and the employee's personal grievances against their employer do not rise to the level of public concern needed to plausibly state a § 31-51q claim. *Ridgeway v. Royal Bank of Scotland Grp.*, No. 3:11-cv-976 (VLB), 2012 WL 1033532, at *16 (D. Conn. Mar. 27, 2012) (speech concerning employer's alleged interference with employee's medical benefits); *Beamon v. Yale New Haven Hosp. Inc.*, No. 3:16-cv-181 (JBA), 2017 WL 969266, at *6 (D. Conn. Mar. 13, 2017) (speech concerning alleged conditions of work

environment in a hospital relating only to a single incident); *Conetta*, 2010 WL 11586740, at *6 (speech relating to employer's alleged discriminatory practices relating to employee's pregnancy and family responsibilities).   On the other hand, speech addressing safety concerns, employer misconduct, and corrupt practices will usually rise to such a level.   *See DiMartino v. Richens*, 263 Conn. 639, 667 (2003) (speech relating to the security of an airport constituted was a matter of concern to the community); *Kennedy v. Coca-Cola Bottling Co. of N.Y., Inc.*, 170 F. Supp. 2d. 294, 299 (D. Conn. 2001) (speech concerning illegal drug use and sales in the workplace was a matter of public concern because it concerned "criminal activity in the workplace and safety issues that would affect the entire workplace and potentially the public"); *Brown v. Office of State Comptroller*, 211 F. Supp.3d 455, 469 (D. Conn. 2016) (speech concerning allegations of corruption, unethical practices, and violations of state and federal law were matters of public concern).

## III.   DISCUSSION

Plaintiff alleges two categories of speech for which he claims he was terminated in retaliation.[2]  First, he refused to sign a patent application because he had "good-faith concerns" regarding the content and credit associated with the application.   Second, he raised concerns regarding Defendant's communication of inaccurate information regarding his transfer date to U.S. Citizenship and Immigration Services, in connection with his H1B Visa.   The Court concludes that Plaintiff's speech that allegedly led to his termination relates to matters of purely private concern

---

[2] Plaintiff also alleges that he was terminated in retaliation for concerns he raised with respect to discrepancies in his position title, salary, and transfer start date.  Compl. ¶¶ 50–53, 80(b)–(c).  However, Plaintiff's opposition brief failed to respond to Defendant's arguments with respect to these allegations, so the Court deems them abandoned.  Moreover, these allegations present a quintessential example of a matter of private concern.  *Donahue v. Unisys Corp.*, No. H-89-670 (JAC), 1991 WL 537530, at *3 (D. Conn. Feb. 15, 1991) ("In the employment context it is indeed difficult to conceive of a matter that is more private than making inquiries about one's own salary.").

and does not constitute protected speech under § 31-51q.  Thus, Count One of Plaintiff's complaint must be dismissed.

As an initial matter, Plaintiff correctly contends that an employee's *refusal* to speak may warrant protection under the United States Constitution and Connecticut Constitution.  *See Brown*, 211 F. Supp. 3d at 469 ("The First Amendment protects both the 'right to speak freely and the right to refrain from speaking at all.'" (quoting *Jackler v. Byrne*, 658 F.3d 225, 238 (2d Cir. 2011))).  Here, however, Plaintiff's refusal to sign the patent application is not a matter of public concern as contemplated by the state constitution and § 31-51q.  Plaintiff's complaint clearly indicates that his refusal to sign the patent application derived from the lack of credit given to him for specific ideas in the application.  Such concern is a prototypical example of a personal employment grievance and fails to address any "broader public purpose" that is "of inherent interest to society at large."  *Daley*, 249 Conn. at 780 (quoting *Lewis*, 165 F.3d at 163–64); *see also Specht v. City of N.Y.*, 15 F.4th 594, 602 (2d Cir. 2021) (recognizing that "internal workplace grievances [are] not matters of public concern").  Moreover, Plaintiff's allegations about his refusal to sign the patent application fail to suggest that he was concerned about any "official dishonesty, unconstitutional action, threats to health and safety, [or] serious wrongdoing" by Defendant.  *See Trusz*, 319 Conn. at 204.  Therefore, it does not fall within the categories of protected speech under § 31-51q.

Plaintiff also alleges that he refused to sign the patent application due to concerns over "some newly added content" for which he "requested additional information."  Compl. ¶¶ 19–20.  To the extent these allegations could be construed to suggest that Plaintiff had substantive concerns about the content of the patent application, beyond the proper assignment of credit, such allegations fail to state a claim for retaliation in violation of § 31-51q.  Plaintiff alleges nothing

about the specific additional content at issue.  Indeed, his opposition brief asserts that Plaintiff believed the additional content to be "materially false" without citation to any allegations in the complaint that would support that assertion.  ECF No. 16 at 2.  Plaintiff's allegations of substantive content concerns are vague and devoid of factual detail linking those concerns to any public matter.  Therefore, they cannot support a claim under § 31-51q.  *See Beamon*, 2017 WL 969266, at *4 (where the plaintiff's speech regarding vague allegations of an employer's poor behavior "lack[ed] any factual detail that would implicate [matters of public concern]," such "conclusory allegation[s]" could not plausibly state a claim under § 31-51q).

Plaintiff further contends that his refusal to sign the patent application is a matter of public interest by alleging that he "requested that the patent group perform a complete investigation of events to avoid these situations in the future."  Compl. ¶ 26.  Again, however, this conclusory allegation fails to state a claim.  To the extent he requested an investigation to ensure proper assignment of credit in the future, Plaintiff's complaint never suggests that Defendant maintained a practice or had a widespread problem of failing to give credit for the ideas of other designers besides Plaintiff.  In other words, this allegation fails to plausibly state that Plaintiff desired an investigation as a way to "champion the rights of others" rather than to merely "redress personal grievances."  *See Conetta*, 2010 WL 11586740, at *6.  To the extent he requested an investigation to ensure that future patent applications contain proper substantive content, as noted, Plaintiff fails to state what missing or improper content would be the subject of such an investigation.

In addition, Plaintiff's allegations regarding Defendant's alleged mishandling of his H1B Visa renewal do not pertain to a matter of public interest.  An employee's speech raising concerns about an employer's widespread practice of inaccurately or fraudulently reporting immigrant employees' information in connection with work visa applications could conceivably suggest

corruption, dishonesty, or other serious wrongdoings that would raise public concern. *Cf. Brown*, 211 F. Supp. 3d at 478–79 (holding that the plaintiff's allegations that the defendants engaged in "corruption, unethical practices, and violation of state and federal tax laws" were sufficient to state a claim under § 31-51q); *Jackler*, 658 F.3d at 240 (concluding that a police officer's refusal to falsify a civilian's report of excessive force addressed a matter of public concern and therefore was protected speech); *Singer v. Ferro*, 711 F.3d 334, 340 (2d Cir. 2013) (recognizing that employer "corruption is plainly a potential topic of public concern," particularly where "sufficiently egregious or widespread").

However, Plaintiff communicated only his concern that Defendant mishandled *his own* H1B Visa renewal. Even reading the complaint liberally, the Court cannot reasonably infer that Plaintiff raised any concerns about systematic immigrant visa mishandling by Defendant or that were otherwise meant to "champion the rights" of other immigrant employees. *Norton v. Breslin*, 565 F. App'x 31, 34–35 (2d Cir. 2014) (summary order) (dismissing retaliation claim brought under 42 U.S.C. § 1983 where the plaintiff's "complaints of personal discrimination [were] not connected to any broader policy or practice," and her speech concerning inappropriate disclosure of her and her mother's health information did not relate to patient confidentiality more generally); *Conetta*, 2010 WL 11586740, at *6 (dismissing § 31-51q claim where the plaintiff's objections to pregnancy discrimination in her workplace were intended solely "to redress personal grievances" and thus were not protected speech); *see also Ridgeway*, 2012 WL 1033532, at *16 (holding that the plaintiff failed to state a § 31-51q claim where his allegations "indicate[d] that he conveyed concerns focused solely on his individual rights under" the Family Medical Leave Act and thus were limited to "the terms and conditions of his employment"). Rather, it is apparent that Plaintiff's speech was related to his own situation, namely, his visa renewal. Plaintiff's concerns

over his visa renewal were clearly personal to him and did not seek to correct a widespread practice by Defendant of supplying dishonest information. *See Norton*, 565 F. App'x at 34 (rejecting retaliation claim where the "primary focus" of the plaintiff's alleged complaints was on the plaintiff's own work situation).

Moreover, Plaintiff's allegations relating to the renewal of his visa do not rise to the level of serious wrongdoing that is considered a matter of public concern. Defendant characterizes this issue as a "clerical error[.]" ECF No. 9 at 9. Plaintiff himself characterizes Defendant's action as having "negligently provided erroneous information" regarding Plaintiff's transfer date. Compl. ¶ 74. The Court cannot reasonably construe this allegation to suggest that Defendant's act in supplying erroneous information about his transfer date was a result of intentional fraud or corruption, given that it represents what appears to be a single clerical mistake involving one employee caught in the confusion of a corporate reorganization. *See Beamon*, 2017 WL 969266, at *5. In other words, even accepting all of the allegations in the complaint as true, the Court cannot infer the kind of fraud, illegal activity, or corrupt practices that would plausibly constitute matters of public concern. *See Trusz*, 319 Conn. at 204 (explaining that an employee generally prevails if "he speaks on a matter of unusual importance," such as "official dishonesty, deliberately unconstitutional action, [or] other serious wrongdoing").[3]

---

[3] Plaintiff relies on *Trusz* for the proposition that the Connecticut Supreme Court "expanded" the protection afforded by § 31-51q, consequently rendering inapposite many of the cases cited by Defendant that pre-dated *Trusz*. ECF No. 16 at 7–8. However, Plaintiff's characterization of *Trusz* is misguided. The Connecticut Supreme Court in *Trusz* considered the rationale of the U.S. Supreme Court's decision in *Garcetti v. Ceballos*, 547 U.S. 410, 421–24 (2006), which narrowed the protection afforded by the First Amendment of the U.S. Constitution for public employees who make statements pursuant to their official duties. The Connecticut Supreme Court found more persuasive Justice Souter's dissenting opinion in *Garcetti*, and therefore declined to adopt the *Garcetti* majority's articulation of the law with respect to the Connecticut Constitution and § 31-51q. *Trusz*, 319 Conn. at 179. Instead, the court adopted a modified balancing test that requires consideration of whether an employee's speech concerns official dishonesty, deliberately unconstitutional action, or other serious wrongdoing, or threats to health and safety. *Id.* at 216. But *Trusz* does not abrogate the earlier case law concerning the contrast between matters that affect an employee's personal interest and those that affect a broader public interest. Accordingly, Plaintiff's characterization of *Trusz* does not save his claim, and reliance on cases that pre-dated *Trusz* is proper.

Accordingly, Plaintiff fails to allege that he was terminated in retaliation for speech protected by the United States Constitution or Connecticut Constitution, and his retaliation claim under § 31-51q cannot survive.

**IV.    CONCLUSION**

Because Plaintiff fails to allege that his speech addressed a matter of public concern, Defendant's Motion to Dismiss, ECF No. 9, is GRANTED.  Count One of Plaintiff's complaint, ECF No. 1, is dismissed from this action.

**SO ORDERED** at Hartford, Connecticut, this 5th day of July, 2022.

 */s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE